[Cite as *State v. Jones* , 2015-Ohio-5443.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 4-15-11

      v.

IVAN M. JONES,                       O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 14CR12051

**Judgment Affirmed**

Date of Decision:   December 28, 2015

APPEARANCES:

    *W. Alex Smith* **for Appellant**

    *Brian S. Deckert* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant Ivan Jones ("Jones") brings this appeal from the May 26, 2015 judgment of the Defiance County Common Pleas Court sentencing Jones to 18 years in prison after Jones was convicted in a jury trial of Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and a Repeat Violent Offender Specification pursuant to R.C. 2941.149. On appeal Jones specifically challenges the trial court's denial of Jones's motion to continue the case, which he made on the day of trial.

*Relevant Facts and Procedural History*

{¶2} Jones was indicted on October 2, 2014, for one count of Felonious Assault in violation of R.C. 2903.11(A)(1). The indictment also contained a specification pursuant to R.C. 2941.149 alleging that Jones was a Repeat Violent Offender ("RVO") due to Jones having a prior conviction in Michigan for "Assault with intent to do great bodily harm less than murder." (Doc. No. 1).

{¶3} Jones was determined to be indigent and attorney Steven Furnas was appointed to represent him. Jones was subsequently arraigned and he pled not guilty to the charge and the RVO specification.

{¶4} On December 30, 2014, Jones's attorney filed a motion to withdraw as Jones's counsel due to the fact that he was joining the prosecutor's office. The

motion to withdraw was granted. Attorney Jeffrey Horvath was then appointed as counsel for Jones.

{¶5} Due to Jones's prior counsel joining the Defiance County Prosecutor's Office, a special prosecutor from the Ohio Attorney General's Office was assigned to prosecute Jones's case.

{¶6} Despite being represented by his new counsel, on January 6, 2015, Jones filed a pro se motion to dismiss contending that there was not enough evidence to sustain a conviction against him. (Doc. No. 14).

{¶7} On March 16, 2015, Jones sent a letter to the judge presiding over his case, which was filed in the record before us. In the letter Jones stated that he was informed by his counsel that Jones's pro se motion to dismiss would not be heard and that all filings had to come from counsel since Jones was represented by counsel. In the letter Jones stated that he thought his attorney was being untruthful, so Jones wanted to know if what his attorney had informed him was accurate.

{¶8} In addition to the letter and the motion to dismiss that Jones filed, Jones wrote and filed multiple other pro se motions. According to the record Jones filed a pro se motion to suppress evidence arguing that the victim had recanted her statements and that any of her statements she had made previously should be suppressed. The suppression motion was accompanied by a typewritten

and notarized statement of the victim wherein the victim stated that she wished to recant her statement that Jones had beat her and that she did not want to press charges against him.[1]  (Doc. No. 35).

**{¶9}** Jones also filed another pro se motion to dismiss arguing that he did not receive a preliminary hearing within 10 days of arrest.  Jones contended that this entitled him to a dismissal of his case despite the fact that he had been subsequently indicted. (Doc. No. 36).

**{¶10}** On March 20, 2015, Jones's attorney filed a notice of alibi indicating that Jones was at a party at the time the victim was assaulted.  (Doc. No. 23).

**{¶11}** On March 20, 2015, a pretrial hearing was held on the record.  At the hearing the trial court acknowledged that Jones had filed a number of pro se documents including the motions to dismiss, the motion to suppress evidence, and the letter to the court.  After reviewing the documents filed by Jones, the trial court informed Jones that he was represented by counsel and that it was Jones's counsel's job to file motions on his behalf.

**{¶12}** Jones then stated that he told his attorney to file the motions and his attorney did not file them.  Jones's attorney addressed why he did not file Jones's motions, stating that the first motion to dismiss was based on anticipated testimony from the alleged victim that would go to the trier-of-fact, and thus there

---

[1] Jones's motion also requested the return of some property of his that had been taken.

was no merit to the motion. Jones's attorney stated that while Jones was concerned with purported issues with the timing of his preliminary hearing in his second motion to dismiss, Jones was ultimately indicted, curing any defects and thus there was no arguable issue.[2] In addition, Jones's counsel also indicated that Jones wanted something filed regarding speedy trial; however, Jones's counsel indicated that due to requests for discovery and tolled time he did not believe any such argument had merit. Jones's counsel stated at the hearing that although he discussed these issues with Jones, Jones had filed the pro se motions without his knowledge and he had not even received any copies of motions that Jones filed.

{¶13} Ultimately the trial court instructed Jones to speak with his attorney about the matters and informed Jones that only motions filed by his attorney would be considered.

{¶14} On March 24, 2015, Jones's counsel filed a motion in limine seeking to prevent the State from offering the contents of Jones's jailhouse phone calls wherein Jones spoke to the victim after he was indicted and Jones tried to convince her to recant her story. Jones's counsel also filed a notice of intent to

---

[2] This Court has made clear in the past that " 'the general rule is that a subsequent indictment by the grand jury renders any defects in the preliminary hearing moot[.]' " *State v. Gott*, 3d Dist. Auglaize No. 2-88-19, 1990 WL 88799, * 9 (June 28, 1990) quoting *State v. Washington*, 30 Ohio App.3d 98, 99 (8th Dist.1986). To be clear, we are not suggesting there was any issue related to any such preliminary hearing in this case (the first item filed in the trial court's docket is the indictment so we would have no way to review any such preliminary hearing), we are simply suggesting that even assuming there was an issue with the preliminary hearing it would be wholly irrelevant and inconsequential as there was a subsequent indictment filed. Any defect in the preliminary hearing would not warrant dismissal of the subsequent indictment.

object to the use of the judgment entry of Jones's prior conviction in Michigan to establish that Jones was a RVO.

{¶15} On March 25, 2015, the matter proceeded to a jury trial. The trial court first addressed the motion in limine filed by Jones's counsel and the trial court overruled the motion. The court then addressed the issue of the State presenting the judgment entry of Jones's prior conviction to prove the RVO specification. The trial court determined that the State could use the prior judgment entry at trial.

{¶16} At that time Jones indicated that he was not aware of the potential penalties for the RVO specification, despite clearly being informed at arraignment and stating that he understood at that time. Plea negotiations were then put on the record, and one final offer was provided to Jones to plead to the Felonious Assault and have the RVO specification dismissed. The court recessed briefly to allow Jones to consider the final offer.

{¶17} When court reconvened, Jones stated that he wanted to fire his attorney and he requested another attorney. The court stated that since the matter was set for trial that day, Jones could not have a different attorney appointed to him as the matter had been pending for months. Despite the court denying Jones's request for a different attorney on the day of trial, Jones still asked that his

attorney be removed from his case. (Tr. at 21). Jones stated that he wanted to represent himself. (*Id*.)

**{¶18}** The trial court engaged in a lengthy dialogue with Jones stating that it is "generally a bad idea to proceed without an attorney." (Tr. at 21). The trial court discussed with Jones the difficulty of evidentiary procedure. The trial court also inquired into Jones's education and Jones stated that he had only gone as far as seventh grade in school. (*Id*. at 23). The trial court also discussed the fact with Jones that Jones had previously represented himself in a jury trial in the same court and that Jones would be subject to the same rules that the lawyers would have to use. (Tr. at 24).

**{¶19}** Jones stated that he felt he did not have a choice in the matter, though the court stated Jones did have a choice. Jones stated that he had issues with his attorney because his attorney would not file the motions requested by Jones that were addressed at the preliminary hearing. Jones indicated that it was because of these issues he felt he did not "have a choice" but to represent himself. (Tr. at 24).

**{¶20}** Jones's counsel, who had not been removed yet, then requested a continuance for Jones if Jones was going to represent himself. The trial court denied the request for continuance since the case had been pending since October and since the jury venire was waiting.

**{¶21}** The trial court took another recess and prepared a written waiver of counsel for Jones to execute. When court reconvened the trial court again asked Jones what he wished to do. Jones's attorney indicated that Jones did not want him as his attorney and that Jones wanted a new attorney. The trial court reiterated that it would not appoint a new attorney at the last minute "because he or she could not conceivably be ready to proceed with trial." (Tr. at 28). The trial court further stated that Jones had a "right to represent [himself] if [he] chose to do that. I've told you that is a bad idea. It is likely not in your best interest. It is, however, your right." (*Id.*)

**{¶22}** The trial court further reiterated the difficulty with Jones representing himself and stated that if Jones chose to represent himself his current attorney, due to his familiarity with the case, could be appointed simply to assist Jones. Jones requested that it be someone else, but the trial court stated that it could not be because no other attorney would have the same familiarity with the case on such short notice.

**{¶23}** Jones then asked the court if he would be able to file his motions if he represented himself. The trial court stated that it would take them into consideration; however, the court cautioned Jones that the prior pro se motions Jones filed did not have any merit and would be denied. (Tr. at 32).

{¶24} A written waiver of counsel was then signed in open court. Beside his signature Jones added the words "was not giving [sic] all my rights." (Doc. No. 37). When questioned by the trial court Jones initially said he simply signed the waiver and did not read it. The trial court then had the written waiver of counsel read to him. (Tr. at 33). Jones stated that he was "getting railroaded" and that "[y]ou all want to give me eighteen years, man. I see it, man." (Tr. at 34).

{¶25} The trial court then stated it did not have any intention of giving Jones anything, that Jones had a right to trial by jury, and that Jones had been afforded every one of his constitutional rights but was attempting to "manipulate the situation[.]" (Tr. at 35).

{¶26} Jones then stated that he had no help on his case since October and that his attorney had done nothing for him. The following dialogue then ensued between the trial court and Jones.

> **THE COURT: You do not want him to represent you? By signing this document you say you intend to represent yourself.**
>
> **THE DEFENDANT: What has he done?**
>
> **THE COURT: Is it your intention to represent yourself?**
>
> **THE DEFENDANT: I don't have a choice, Your Honor. I – I – don't have a choice.**
>
> **THE COURT: You have the choice to have Mr. Horvath represent you, or to represent yourself.**
>
> **THE DEFENDANT: What – What --**

**THE COURT:  You've signed this waiver of counsel, by signing that your** [sic] **saying you intend to represent yourself.**

**THE DEFENDANT:  What is he going to do when he represent me?  He ain't--**

**THE COURT:  I don't --**

**THE DEFENDANT:  --did nothing yet.  What is he going to do?  Just stand there and sit there – I mean he look nice in the suit, but --**

**THE COURT:  This --**

**THE DEFENDANT:  -- that's the only thing he's doing.**

**THE COURT:  Mr. Jones, this is – this is not a game --**

**THE DEFENDANT:  That's what I'm trying to tell you --**

**THE COURT:  -- This is a --**

**THE DEFENDANT:  -- twenty years of my life is we talking about right now Mr. – Mr. Schmenk – twenty years, man.  I just did ten.  Trust me, I know very well what's --**

**THE COURT:  All right.**

**THE DEFENDANT:  -- going on right now, man.  Very well, man.**

**THE COURT:  You've also – if your** [sic] **choosing to represent yourself, do you want Mr. Horvath to assist you regarding --**

**THE DEFENDANT:  -- can I have any other --**

**THE COURT:  -- technical issues?**

**THE DEFENDANT:** -- attorney help assist me? 'Cause he ain't help assist me this whole time.

**THE COURT:** There's no other attorney that's going to be familiar with the situation at all. I'm not going to continue the trial given the circumstances in this matter and --

**THE DEFENDANT:** I ain't had no time, look at these, study these, nothing.

**THE COURT:** You were told back in January that the Court was not going to take the motions you filed on your – or attempted to file on your own behalf. That those would not be considered, and certainly had you intended to, um, attempt to fire Mr. Horvath and have another attorney represent you, you could have asked that back in, no later, I guess, than --

**THE DEFENDANT:** This guy been telling --

**THE COURT:** January.

**THE DEFENDANT:** -- me, he going to help try to get my money back since then.[3] You know what I mean, and he just didn't do anything. He didn't file it. That's all I asking in most of these, you say they don't have no merit. I don't understand why they don't have no merit.

**\* \* \*** [The trial court then gives a multi-page response as to why Jones's pro se motions have no merit. After discussing those motions with Jones, Jones begins to talk about issues that are not directly related to the trial.] **\* \* \***

**THE COURT:** We're going to trial. Do you want Mr. Horvath appointed to assist you or not?

**THE DEFENDANT:** I need somebody else to help assist me.

---

[3] The money Jones refers to is approximately $600 that was taken from Jones when he was arrested.

**THE COURT:  I'm not going to appoint a different attorney who would have no knowledge of the circumstances and no idea what the case is about.  I'm not going to bring him in at this point in time, and make an attorney attempt to assist you when they wouldn't have any idea what even the case is about.**

**THE DEFENDANT:  What you want me to say, Your Honor?  I can't – I can't say no more.**

**THE COURT:  I want you to say yes, you want Mr. Horvath to assist you, or no you do not want Mr. Horvath to assist you.**

**THE DEFENDANT:  I do not want Mr. Horvath.**

**THE COURT:   Mr. Horvath, you can be excused, you're released.**

(Tr. at 36-43).

{¶27} The case then proceeded to trial.  During jury selection Jones asked for a continuance again because he had not reviewed the jury questionnaires.  Jones also filed a written motion stating this same request.  (Doc. No. 33).  The trial court denied Jones's motion stating that the matters related to a continuance had been discussed.  (Tr. at 64).

{¶28} After jury selection Jones renewed his motion to continue, stating that he had not had a chance to go through discovery.  (Tr. at 136).  That request was again denied after the court noted that it found Jones's claim "completely implausible" on the basis that there had been numerous pre-trial conferences and Jones had filed and prepared his numerous pro se motions.  (*Id*. at 137).  The trial

court also noted that Jones had asked his prior attorney to prepare a notice of alibi, indicating his familiarity with the record. (*Id.*)

{¶29} Another lengthy discussion was held between the trial court and Jones during which the court made clear that Jones chose the morning of trial to fire his lawyer "in an effort, I suspect, to manipulate the system * * * to get the case continued[.]" (Tr. at 141). Jones then stated that he wanted to appeal the denial of his pretrial motions, and the trial court stated that Jones could not until his case was complete. (*Id.* at 143).

{¶30} When Jones stated that he could not read his prior attorney's notes that were in the files, the trial court renewed the offer to allow attorney Horvath to act as standby counsel; however, Jones simply repeated his request for a continuance and the court denied it. (Tr. at 148). The discussion continued further to the point where Jones asked for another continuance and the court denied it again, stating that it felt Jones was attempting to manipulate the trial date.

{¶31} The case then proceeded through opening statements and the State began its case-in-chief by calling the victim to the stand. On direct-examination the victim testified that after an argument in September of 2014 Jones "started punching [her] in the face, repeatedly. And then started choking [her] and told [her], say Ivan Jones, say Ivan Jones[.]" (Tr. at 188). The victim indicated that

Jones punched her seven times, mainly on the right side of her face, but also on the left side of her face. (*Id*. at 190).

{¶32} The victim testified that afterward Jones cleaned up her face but he would not let her look in the mirror. (Tr. at 190-191). The victim testified that Jones apologized and that Jones said she needed medical attention. (*Id*.) The victim testified that she was afraid to call the police or seek medical attention initially because she did not want Jones to go back to prison. (*Id*. at 191-192). She further testified that she and Jones came up with a story at the time that she would say she met someone online and that he had beat her. (Tr. at 195-196). The victim testified that she and Jones went to a hotel shortly after the incident and that the police became involved after a desk clerk saw the victim's face when she approached the desk alone once Jones went to sleep. The police responded and the victim was taken to the hospital.

{¶33} The extent of the victim's injuries was later established at trial through the testimony of an ER physician who treated the victim. From the incident the victim had a fracture of part of her face, specifically her "maxilla," which was described as "part of what makes up your upper jaw[,] * * * what the teeth insert into[.]" (Tr. at 434). The primary injury was described as "basically a broken bone with significant bleeding and swelling under the skin." (*Id*. at 434). In addition to the fracture, the victim's injuries were described as, "[a] significant

amount of swelling mainly to the right side of her face along with two black eyes. Her nose was swollen. Her lip was so swollen that we couldn't even really even [sic] see within her mouth[.]" (*Id.* at 433-34).

{¶34} The victim further testified on direct-examination that after Jones was indicted in this case she received numerous phone calls from Jones while Jones was in jail. The victim testified that Jones would call an intermediary who would then contact the victim. Three of the jailhouse calls were played for the jury wherein Jones urged the victim to "change [her] story." (State's Ex. 48). Jones instructed the victim to write a statement recanting her earlier story to the police and told her how to do it. When Jones asked the victim if he could trust her to do it, the victim responded "can I trust you not to beat my face in again?" (*Id.*)

{¶35} When the victim's direct-examination concluded, Jones started his lengthy cross-examination of the victim, but by the end of the first day of trial, Jones's cross-examination was not finished so the trial recessed for the day.

{¶36} At the start of the second day of the trial, before the jury was brought in, the State indicated that it was contacted by the victim the prior night and the victim indicated she had received a call that evening from the jail. It would later be established through testimony that it was Jones who attempted to call the victim on the first night of trial.

{¶37} As the court addressed preliminary issues on the second day of trial, it brought up the issue of Jones requesting continuances so many times the day prior both out of the presence of the jury and in the presence of the jury. The trial court gave the State another opportunity to address Jones's requests and the State indicated it was opposed to a continuance. The trial court then wanted to elaborate on its reasons for denying Jones's request for a continuance. The trial court stated that,

> **A principal concern that the Court had – has still, and it was brought to the Court's attention essentially at the time, the motion in limine was filed on behalf of the Defendant seeking to exclude the jail tape, and specific reference was made in that motion to the Defendant's attempt to procure the unavailability of the State's principal witness. The Court determined that it can further – or that a continuance particularly at yesterday's date was, had the potential for significant prejudice to the State, as it was apparent to the Court that the Defendant had and apparently was continuing to attempt to prevent the witness from appearing or attending. The Court had not prior to yesterday's testimony heard the expressed content of the jail tapes. But it confirms that obviously the Defendant was expressly attempting to prevent or convince the witness to not attend, to modify her statements or testimony, and that set of circumstances is a – was a substantial factor in the Court's denial of the motion to continue. I don't know that I expressly stated that. I know I referred to the Defendant's attempt to manipulate the system and I thought I had expressed what I meant by his efforts to manipulate the system, though principally with his efforts to try to procure the unavailability of the State's principal witness.**

(Tr. at 367-368).

{¶38} After the preliminary matters on the second day of trial were concluded, the case proceeded through the remainder of the State's case-in-chief. The State called twelve witnesses total including the victim. The State also introduced the victim's medical records related to the incident, the jailhouse calls made by Jones, and numerous photographs of the victim from the night of the incident and from several days after the incident that illustrated *significant* facial bruising from the fracture and the beating.

{¶39} After the State rested its case, the trial was continued into its third and final day. During the final day of trial Jones called four witnesses and he testified on his own behalf.[4] The parties then proceeded to closing arguments and the case was submitted to the jury, which returned guilty verdicts on both the Felonious Assault charge and the RVO specification.

{¶40} On April 13, 2015, the trial court filed an entry explaining what occurred at the trial including Jones's waiver of counsel. The entry accepted the jury's verdict and the matter was set for sentencing.

{¶41} Jones then filed a pro se notice of appeal from the trial court's April 13, 2015 entry. This Court dismissed Jones's appeal on April 24, 2015, after determining that there was not a final appealable order at that time.

---

[4] We would note that throughout the trial Jones made numerous claims in front of the jury that he had to represent himself because his prior attorney had done nothing on the case, and that discovery was not provided to him

-17-

{¶42} On May 12, 2015, the case proceeded to sentencing. The State requested a maximum sentence given the seriousness of the harm to the victim and Jones's lengthy criminal history. Jones requested leniency. Ultimately the trial court ordered Jones to serve a maximum 8 year prison term on the Felonious Assault conviction and a maximum 10 year sentence on the RVO specification. Those sentences were ordered to be served consecutively for an aggregate prison term of 18 years. A judgment entry memorializing this sentence was filed May 26, 2015.

{¶43} It is from this judgment that Jones appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED WHEN [IT] DENIED THE DEFENDANT'S MOTION TO CONTINUE, A VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I § 10 OF THE OHIO CONSTITUTION.**

{¶44} In his assignment of error, Jones argues that the trial court erred by denying his motion to continue the case that Jones made on the day of trial.

{¶45} "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger,* 67 Ohio St.2d 65, 67 (1981). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶46} The Supreme Court of Ohio has recognized: " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Unger* at 67, quoting *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964) (additional citations omitted). "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger,* 67 Ohio St.2d 65, 67 (1981).

{¶47} In *State v. Unger*, *supra*, the Supreme Court of Ohio identified a number of factors a trial court should consider when evaluating a motion for a continuance, which include (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Unger* at 67–68; *Defiance v. Ford*, 3d Dist. Defiance No. 4-14-07, 2014-Ohio-5627, ¶ 18.

{¶48} In this case Jones argues that the factors the Ohio Supreme Court delineated in *Unger* support granting his motion for a continuance. We will address each of the *Unger* factors below, discussing the record and the parties' arguments regarding those factors.

*Length of Delay and Prior Continuances*

{¶49} Jones argues that the first two factors of *Unger*, (1) the length of delay requested and (2) whether other continuances have been requested or received, weigh in his favor. The record is clear that Jones had not previously requested any continuances in this case, so Jones contends that the second factor obviously weighs in his favor. As to how much time Jones contended that he needed, Jones orally requested a "small bit of time" or "a couple of days" for his continuance. (Tr. at 156). Jones argues that such a short time requested for a continuance was inherently reasonable given that Jones elected to represent himself at trial.

{¶50} While the State does concede that there had been no prior continuances requested in this case, the State does argue that the "couple of days" requested by Jones would actually amount to a much longer delay than Jones suggested. The State argues that the jury venire would have to be dismissed and that a trial date would have to be scheduled and coordinated with the court, prosecutors and witnesses. The State contends that granting such a request could

have effectively resulted in a continuance of months rather than days. The record indicated that the trial court shared the State's concern that a jury was present and that the case had been pending for months.

*Inconvenience*

{¶51} The third factor of *Unger* considers the inconvenience to the litigants, witnesses, opposing counsel and the court. Jones argues that there would have been little inconvenience to the witnesses due to the fact that most of the witnesses were "relatively local." However, Jones does acknowledge in his brief that there would have been some inconvenience due to the fact that the jurors were already at the courthouse. Jones also acknowledges that the special prosecutors were coming in from out of town. Nevertheless, Jones argues that the third factor of *Unger* weighs in his favor.

{¶52} The State counters by suggesting that the inconvenience to the State would have been substantial. The State contends that numerous witnesses had been subpoenaed and were ready to testify on the days set aside for trial. In addition, the State noted that a jury panel had been brought in and counsel for the State was from out of town.

*Legitimacy of the Requested Continuance*

{¶53} The fourth factor of *Unger* concerns whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived. Jones

contends that he legitimately needed the continuance to prepare his defense since he elected to represent himself on the day of trial. Jones indicated to the trial court, and he argues on appeal, that he was not prepared to defend his case after dismissing his attorney.

{¶54} The State argues that Jones's request to continue the case on the day of trial was not for legitimate reasons. The State contends that this factor, more than any other, weighs most heavily against Jones due to Jones's attempts throughout the pendency of this case to change the victim's testimony.

{¶55} The record did reflect that Jones had made numerous phone calls to the victim in this case while Jones was in jail. Jones used an intermediary so that he could talk to the victim. In the phone conversations, which were played for the jury, Jones told the victim to change her story and urged her to recant what she had told the police previously. Jones also attempted to call the victim from jail after the first day of trial.[5]

{¶56} When the trial court denied Jones's motion for a continuance, the trial court stated that it was particularly concerned with Jones attempting to manipulate the trial date. The trial court later elaborated stating that it was seriously concerned with Jones's potential manipulation of the victim. The trial

---

[5] The State suggested that Jones possibly got the victim's new phone number from his dismissed attorney's notes once Jones elected to represent himself.

court cited this factor as its primary reason for denying Jones's motion for continuance.

*Jones's Contribution to the Circumstances*
*Giving Rise to the Continuance*

**{¶57}** The fifth factor of *Unger* concerns whether Jones contributed to the circumstances giving rise to the continuance. While Jones argues that this factor should not weigh heavily against him, the record clearly reflects that Jones was the sole reason for his request for a continuance.

**{¶58}** Prior to the trial, Jones had expressed that he did not feel his attorney was helping him because his attorney was not filing motions that Jones was requesting his attorney to file. A pre-trial hearing was held where Jones's motions were addressed by his attorney in open court, and Jones's attorney made clear that he felt the motions had no merit.

**{¶59}** At trial, before Jones dismissed his attorney, the trial court cautioned Jones that his motions had no merit and the court spent multiple pages of the transcript explaining to Jones why the motions had no merit. Notwithstanding the trial court's warnings and his attorney's statements on the record, Jones cited his distrust with his attorney for not filing these meritless motions as his primary reason for not feeling comfortable with his attorney. Jones stated he felt his attorney had done nothing on his case despite the fact that his counsel had filed a motion in limine, a notice of alibi, and he clearly had interviewed witnesses. In

fact, Jones later complained that he could not read his attorney's handwriting on all the notes that his attorney had made. Despite all of this, Jones stated he had "no choice" but to dismiss his attorney on the day of trial and Jones flatly refused to keep his attorney even as standby counsel to help with procedure. Moreover, when Jones later stated he could not read his attorney's notes that were in discovery, the trial court offered to bring his attorney back as standby counsel after already dismissing him and Jones *still* elected to proceed pro se.

{¶60} Jones could have at any time prior to the day of trial elected to request a new attorney, yet he waited until the day of trial and claimed that he had to have a new attorney. On the basis of then proceeding without an attorney, Jones sought a continuance that was solely of his making.

*Any Other Relevant Factor(s)*

{¶61} The final factor of *Unger* is a catch-all, allowing a court to consider any other relevant factor. Jones contends that the trial court should have heavily weighed the potential prejudice to Jones for having to handle his own jury trial. The State contends that Jones had already previously represented himself pro se in a jury trial and was obviously very familiar with the system, so there was minimal potential prejudice.

*Analysis*

{¶62} The strongest supporting factor under *Unger* that Jones has in his favor is that he had not previously asked for a continuance in this case prior to requesting one on the day of trial. However, the trial court could have properly found that several of the *Unger* factors weighed heavily against granting Jones's request for a continuance.

{¶63} Jones was clearly responsible for any purported necessity of the continuance due to his obstinacy to proceed without even standby counsel. Jones claimed that he was not prepared to proceed without counsel and that he had not looked through discovery but Jones flatly refused to allow his former attorney to provide any assistance.

{¶64} Moreover, Jones's request for a continuance seems particularly illegitimate given that after the first day of trial he attempted to contact the victim, presumably in yet another attempt to get her to change her story. The trial court was especially concerned with this factor, and placed that concern on the record when noting why it denied Jones's continuance.

{¶65} Furthermore, there is some inherent inconvenience to the court, the State, and the jury venire in continuing the case on the day of trial after everyone had already arrived.

{¶66} Given that there were multiple reasons supporting the trial court's decision to deny Jones's request for a continuance in this case, we cannot find that the trial court abused its discretion in denying Jones's motion for a continuance. Therefore Jones's assignment of error is overruled.

{¶67} For the foregoing reasons Jones's assignment of error is overruled and the judgment of the Defiance County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**